IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:09-cr-225 |
| | ) | Judge Trauger |
| | ) | |
| MICHAEL WAYNE COOPER | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the defendant Michael Wayne Cooper's Motion to Suppress (Docket No. 21). For the reasons discussed herein, the defendant's motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2008, Metro Nashville Police Department (MNPD) Officer William E. Bolan submitted an affidavit in support of his application for a warrant to search the defendant's home, located at 318 Myatt Drive in Nashville, Tennessee. (Docket No. 22 Ex. 1 at 3-4.) In that affidavit, Officer Bolan stated that, within the past 72 hours, he and fellow officers had "met with a [Confidential Informant ("CI") named Bad Red] in preparation to make a drug purchase," specifically a purchase of marijuana at 318 Myatt Drive. (*Id.*)

Bolan stated that, in preparation for this "controlled buy," the CI and the CI's vehicle were searched and "no illegal contraband was found." (*Id.*) The CI was then "stripped" of all U.S. currency and given specific, recorded currency for use in the controlled buy. (*Id.*) The CI then drove, with Bolan in the passenger seat, to 318 Myatt Drive, where the CI parked in the driveway, exited the vehicle and "walked directly to the front door." (*Id.*) Bolan observed the CI

1

go inside the residence, where he remained "for a short period of time." (*Id.*) The CI "then exited this dwelling through the same door and returned to [his] vehicle," where Bolan was waiting in the passenger seat. (*Id.*)

After getting back into vehicle, the CI "tossed directly to [Bolan] a one gallon sized zip lock plastic baggie. Contained in the baggie was a green plant material. This green plant material smelled like and was consistent with marijuana." (*Id.*) Apparently relying on statements from the CI, Bolan stated that the baggie "was exchanged inside the residence for the previously recorded U.S. currency." (*Id.*) The CI and Bolan then returned to the "staging area," where the CI was searched and "no illegal contraband was found on his person or in [his] vehicle." (*Id.*) Bolan then gave the baggie to another MNPD officer, who took it "directly to the East Precinct where it was turned in as evidence with a drug narcotic offense report." (*Id.*)

In his affidavit, Bolan provided additional background on himself and the CI. Bolan stated that, as a law enforcement officer, he had "participated in police patrol and narcotics enforcement since 2001." (*Id.*) As to the CI, Bolan stated that he "is familiar with marijuana from past exposure and experience." (*Id.*) Bolan stated that he knew the CI to be "reliable for said CI has been arrested for possessing illegal narcotics and drug equipment." (*Id.*) Bolan stated that he would disclose the CI's name only to the judge signing the search warrant, as the CI "wishes to remain anonymous for fear of reprisal." (*Id.*)

On September 5, 2008, based upon this affidavit, General Sessions Court Judge Sue M. Evans issued a search warrant for the Myatt Drive property. (*Id.* at 1.) On September 10, 2008, that warrant was executed by several officers from the MNPD. (Docket No. 21 at 1.) In the officers' search of the defendant's home, they found marijuana and two handguns. (*Id.*)

2

The defendant was charged in Tennessee state court on firearms and drug charges. (*Id.*) During that proceeding, the defendant moved to suppress the fruits of the search of his home. (Docket No. 22 Ex. 2.) Examining Bolan's affidavit, state Criminal Court Judge Steve Dozier noted that the only information in the affidavit as to how the marijuana was obtained during the controlled buy came from the CI, that is, there is no indication that the police observed the controlled buy or monitored the exchange electronically. (*Id.* at 2-3.) Judge Dozier concluded that Bolan's affidavit did not sufficiently establish the CI's reliability or sufficiently provide "corroborating information to render the informant's hearsay information regarding his purchase of the marijuana reliable." (*Id.*) Applying Tennessee law, Judge Dozier granted the defendant's motion to suppress.[1] (*Id.*)

On September 23, 2009, the defendant was indicted in this court on the charges of: (1) possessing a firearm after previously having been convicted of a crime punishable by more than one year in prison and (2) possessing marijuana with the intent to distribute. (Docket No. 1.) On February 5, 2010, the defendant filed the pending motion to suppress.

## ANALYSIS

The defendant has moved to suppress the evidence discovered in the search of his residence, arguing that Officer Bolan's affidavit fails to establish probable cause. The defendant also asserts that the *Leon* good-faith exception to the exclusionary rule does not save the evidence seized during the search from suppression.

---

[1] The standard applied by a Tennessee state court for whether an affidavit is supported by probable cause is different from the "totality of the circumstances" standard (discussed below), which this court must apply. *See State v. Henning*, 975 S.W.2d 290, 294-95 (Tenn. 1998).

3

**I.     Probable Cause**

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In considering whether the search warrant and supporting affidavit establish probable cause, courts apply a "totality of the circumstances" approach. *U.S. v. Brooks*, — F.3d — , 2010 WL 393647, *4 (6th Cir. Feb. 5, 2010)(citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). An affidavit is sufficient when it shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 236). The probable cause standard is a "practical, non-technical conception" that considers the "factual and practical considerations of everyday life." *Id.*

If the applicant seeks permission to search a specific location, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *Id.* (quoting *U.S. v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). That is, the affidavit need not establish that the owner of the property is suspected of a crime, but it must show that there is "reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *U.S. v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)(internal quotation omitted).

If the affidavit includes hearsay from a CI, the reviewing court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances . . . ." *Brooks*, 2010 WL 393647, at *4 (quoting *U.S. v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Also, "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id.* (quoting *Frazier*, 423

4

F.3d at 532.) Thus, an affidavit may be sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past." *U.S. v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000). Alternatively, an affidavit containing little information about an informant's reliability may be sufficient if it states that the police corroborated "significant parts" of the information received from the informant. *See U.S. v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006).

A court's review of the evidence supporting a finding of probable cause "look[s] only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *Brooks*, 2010 WL 393647, at *3 (citing *U.S. v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). A magistrate's ruling is afforded "great deference" and is reversed only if the magistrate's authority was "arbitrarily exercised." *Allen*, 211 F.3d at 973.

### A. The Defendant's Argument

The defendant claims that the affidavit does nothing to establish the reliability of the CI and little to establish the probability that the defendant's home was a place at which contraband would be found. The defendant speculates that, because the CI has a criminal history, he was probably "motivated by strong and narrow self-interests," specifically to merely provide *the appearance* of a crime to satisfy the police "without exposing him[self] . . . to retaliation by drug dealers." (Docket No. 21 at 3-4.) Moreover, the defendant argues, even if the CI did in fact "acquire a limited quantity of drugs" from the controlled buy, "that acquisition carries relatively little significance because illegal drugs are relatively commonplace in our society," users often transfer limited quantities from "personal holdings on an occasional basis," and drug dealers frequently change location. (*Id.* at 4-5.) Consistent with all of this, the defendant primarily relies

5

on two Sixth Circuit cases for the proposition that "a single controlled buy made by an informant of unknown reliability fails to establish the probable cause necessary to search a home." (*Id. citing U.S v. Pinson*, 321 F.3d 558 (6th Cir. 2003); *U.S. v. Hython*, 443 F.3d 480 (6th Cir. 2006)).

*Pinson* is a similar case involving an MNPD officer whose affidavit discussed a recent controlled buy in which a CI, who had been previously searched by police and provided with marked money, went into a suspected drug house and exited with a "large yellowish rock" that tested positive for cocaine base. 321 F.3d at 560-61. On reliability, the affidavit stated that "[y]our affiant knows said CI is reliable from past information received from said CI resulting in the lawful recovery of narcotics." *Id.* at 561. The Sixth Circuit found that the affidavit established probable cause. The court concluded that the officer's reliability attestation, combined with the fact that the CI was searched prior to entering the house and the fact that the CI emerged from the house with a substantial quantity of drugs, was sufficient to establish a probability that contraband could be found in the home. *Id.* at 562-65.

Despite the result, the defendant focuses on two points from *Pinson*. First, at one point, the court stated that the affidavit "had to contain [the officer's] attestation, in some detail, of the reliability of the [CI] and evidence sufficient to provide a basis for the magistrate judge's conclusion that it was probable that evidence of a crime would be found" at the house. *Id.* at 562. Second, Judge Gilman's concurrence argued that a single purchase of drugs at the house does not, logically, establish probable cause that drugs would be found at the house in the near future. *Id.* at 568-69.

*Hython* was a case that also involved a CI whose reliability was sworn to in somewhat conclusory fashion and in which the CI made only a single controlled buy of a "baggie" of drugs

6

at the suspect house before the warrant was sought. 443 F.3d at 482-83. The buy was monitored electronically by the police. *Id.* In analyzing whether the warrant was valid, the Sixth Circuit did question whether a single controlled buy could demonstrate probable cause. For instance, the court noted that "[t]he crime at issue in this case – the sale of drugs out of a residence – is not inherently ongoing," and the court favorably cited circumstances in which the affidavit established that the house was an "operational base for a drug ring," rather than a place where a relatively small amount of drugs might be occasionally purchased. *Id.* at 485-86. The court also noted that "[t]he single transaction is not supported by any further police investigation – the affidavit includes no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no second controlled buy, no further surveillance whatsoever." *Id.*

As the defendant recognizes, however, the warrant in *Hython* was obviously invalid because the affidavit did not mention the date of the controlled buy and "[t]hat defect made the case a very easy one." (Docket No. 21 at 8.); *Hython*, 443 F.3d at 486-87 (referring to the date omission as the "more important[]" issue and stating that this "deficiency alone [was] sufficient to render the warrant invalid, without considering any of the affidavit's other weaknesses.") The defendant argues, however, that, given the skepticism expressed by the court about basing a probable cause determination on a single controlled buy, the affidavit in this case should be found to be insufficient. (Docket No. 21 at 9-11.)[2]

---

[2] The defendant also cites *U.S. v. McPhearson*, 469 F.3d 518 (6th Cir. 2006) in support of his argument that the Sixth Circuit would conclude that the warrant in this case was not supported by probable cause. (Docket No. 21 at 7-8.) *McPhearson*, however, involved a readily distinguishable circumstance in which a defendant was arrested and searched just outside of his home. 469 F. 3d at 520. During the pat down search, officers found crack cocaine in the

7

In response, the Government primarily relies upon *U.S. v. Henry*, 299 Fed. Appx. 484 (6th Cir. 2008). (Docket No. 25 at 5.) The officer in *Henry*, who was also a member of the MNPD, submitted an affidavit that was fairly similar to the one in this case. The officer provided virtually no background on the CI, other than to say that he was "reliable." 299 Fed. Appx. at 485. The affidavit stated that, prior to the controlled buy, the CI was searched, given buy money and then sent to the suspect house. *Id.* While the officers were unable to observe what transpired inside the home, the affidavit recounted that, shortly after entering the residence, the CI emerged and returned to his car, at which time the officers followed the CI to another location where the CI turned over a "baggie" of crack. *Id.*

In upholding the district court's determination that the affidavit established probable cause, the court recognized that (1) there was no showing of the CI's reliability other than the conclusory label, (2) there had only been a single controlled buy, (3) there was no suggestion from the affidavit that the controlled buy had been monitored, (4) there was no indication that the CI's car (in contrast to his person) had been searched and (5) the affidavit indicated that the CI had been allowed to travel independently to and from the suspect house. *Id.* at 486-88. Despite all of this, the court concluded that, because drugs were turned over following the controlled buy and because the affidavit showed that "the officers did search the informant himself both before and after the controlled purchase," provided him "with previously photocopied money and conducted surveillance before, during, and after the controlled purchase," the affidavit

---

defendant's "right front pocket." *Id.* The officers then obtained a warrant to search the defendant's house, which the Sixth Circuit determined was not supported by probable cause because the affidavit did not "establish the requisite nexus between the place to be searched and the evidence to be sought." *Id.* at 524. *McPhearson* is not particularly persuasive because, there, the evidence of drug use was found in a separate location from the location to be searched.

demonstrated a "fair probability that contraband or evidence of a crime would be found in a particular place." *Id.* at 488 (internal quotation omitted). Indeed, the court found that the opposite finding would be the result of "reviewing the sufficiency of the affidavit in a hypertechnical manner" rather than the result of "employing common sense and relying on the totality of the circumstances." *Id.*

If *Henry* is the only guide, then the affidavit here clearly established probable cause, because the Bolan affidavit demonstrates significantly greater efforts to corroborate the CI's conduct than were disclosed in *Henry*. That said, as demonstrated in *Hython* and *Pinson*, the Sixth Circuit has also expressed skepticism about making a probable cause determination upon the basis of a single controlled buy, particularly if the affidavit is based upon information that is provided by an informant whose reliability is not established in the affidavit. In light of this, to allow a single, unpublished opinion to entirely drive the analysis would be inappropriate.

That said, based upon all of the circumstances documented in the Bolan affidavit, the warrant was supported by probable cause. While, from a common sense perspective, the CI's reliability is not firmly established by the representation that he is familiar with the drug underworld from personal experience, the affidavit documents considerable efforts by the MNPD to generate "substantial independent police corroboration" of the CI's report. From the affidavit, it is clear that there was no reasonable way that the CI could have secreted drugs on his person prior to entering the Myatt Drive address. Moreover, the affidavit recounts that, after remaining inside the Myatt Drive location for a brief time, the CI emerged, came directly back to the car and immediately produced a large bag of what appeared to be marijuana. Officer Bolan drove with the CI to the Myatt Drive location and remained in the car during the entire transaction. He

9

watched the CI enter the house and emerge with the drugs shortly thereafter, and was given the drugs by the CI in the car, where Bolan had been waiting. Considering the steps that the officers took prior to the controlled buy, the only reasonable explanation is that the large bag of marijuana came from the Myatt Drive house. Whatever the CI's reliability, the officers here effectively provided the required "substantial independent police corroboration."

Moreover, the fact that there was only a single controlled buy does not, in this instance, tip the analysis in the defendant's favor. The affidavit demonstrates that, shortly after going into the house, the CI quickly emerged with a "gallon" sized plastic baggie of marijuana. The circumstances described in the affidavit, therefore, do not indicate that the Myatt Drive location was a place where occasional, recreational users of drugs happened to be "hanging out" one evening, but, rather, they demonstrate that the Myatt Drive address was a location where, in all likelihood, a substantial quantity of drugs were kept on a regular basis. Therefore, the affidavit raises "a fair probability that contraband or evidence of a crime will be found at [the] particular place." *See also Brooks*, 2010 WL 393647 at *5 (the smell of marijuana in a house and appearance of marijuana seeds in an ashtray in the house were sufficient to establish probable cause as "where there is smoke, there may be more there to smoke.") As the warrant was based upon probable cause, it is not necessary to explore the applicability of the *Leon* exception to the exclusionary rule.

For the reasons discussed herein, the defendant's Motion to Suppress (Docket No. 21) is **DENIED**.

_____
ALETA A. TRAUGER
United States District Judge

10

Case 3:09-cr-00225   Document 26   Filed 02/24/10   Page 10 of 10 PageID #: 76